**In the Matter of INTERCO
INCORPORATED, et
al., Debtors.**

**In re INTERCO INCORPORATED,
Broyhill Furniture Industries,
Inc.**

**Richard PRIEST, Movant,**

**v.**

**INTERCO INCORPORATED, Broyhill
Furniture Industries, Inc.,
Respondents.**

**Bankruptcy Nos. 91–40442–
172, 91–40446–172.
Motion No. Z–102.**

United States Bankruptcy Court,
E.D. Missouri, E.D.

March 13, 1992.

See also 137 B.R. 993, 135 B.R. 634.

Bryan, Cave, McPheeters & McRoberts, Gregory D. Willard, Lloyd A. Palans, John C. Boyle, Carl J. Spector, St. Louis, Mo., for debtors-in-possession.

Steven K. Brown, Rosenthal, Brown & Geigerman, St. Louis, Mo., Samuel H. Liberman, Clayton, Mo., for Richard Priest.

### ORDER

JAMES J. BARTA, Bankruptcy Judge.

This Order addresses Claimant's Motion to Determine Sufficiency of Objections/Answers to Admissions Requests and to Compel Discovery. (Motion Z–102) The Claimant in this matter is Richard Priest.

This Court has jurisdiction of this proceeding pursuant to 28 U.S.C. §§ 157 and 1334, 11 U.S.C. §§ 105 and 502, Bankruptcy Rule 3007 and Local District Court Rule 29. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B).

### 1. Background

On January 24, 1991, Interco Incorporated ("Interco") and thirty affiliated entities, including Broyhill Furniture Industries, Inc. ("Broyhill"), filed for relief under Chapter 11 of the United States Bankruptcy Code. The Debtors' Chapter 11 cases are being jointly administered for procedural purposes, pursuant to a January 25, 1991 Order of this Court.

The Debtors are continuing in possession of their property and are operating and managing their businesses as debtors-in-possession, pursuant to 11 U.S.C. §§ 1107 and 1108.

Claimant Richard Priest has filed four proofs of claim in the estates of Interco and Broyhill. These claims are based on Debtors' alleged violations of the Age Discrimination in Employment Act, 29 U.S.C. § 621, *et seq.* ("ADEA") and the Missouri Human Rights Act, R.S.M.O., Ch. 213 and on Debtors' alleged breach of an implied employment contract. Claimant also contends that Debtors violated the Employment Income Security Act, 29 U.S.C. § 1001, *et seq.*, ("ERISA"). Claimant seeks recovery of lost wages and employment-related benefits, including retirement benefits and damages for alleged emotional distress.

On November 4, 1991, Debtors filed an objection to Mr. Priest's claims. (Claim Objection 23). Pursuant to a pretrial scheduling order, the hearing on the claim objection is scheduled for a later date.

On February 18, 1992, Mr. Priest filed "Claimant's Motion to Determine Sufficiency of Objections/Answers to Admissions Requests and to Compel Discovery and Certificate of Attempt to Resolve Dispute." Debtors filed a response to Claimant's Motion to Compel and both parties have filed supporting memoranda. A hearing was

held on March 9, 1992. Claimant submitted a further response including a "Deposition of James K. Pendleton, Taken on Behalf of the Claimant."[1] The parties agreed this Court would limit its consideration of the Pendleton Deposition to Motions Z–102 and Z–105 (Debtors' related Motion to Compel).

At the hearing, the parties indicated that the issues raised in Claimant's Motion to Compel had been narrowed to focus on the issue of whether the admissions and documents sought by Claimant are protected by the attorney-client privilege.

## II. Attorney Client Privilege

 Claimant's request for admission # 45 states as follows:

Prior to November 23, 1987, the date of discharge of Richard Priest, an attorney employed by Interco, Incorporated, one Jim Pendleton, advised Broyhill's management in connection with the ADEA implications of the proposed discharge of Priest and others.

Debtors have asserted that, "Although Debtors originally objected to these requests based on the attorney-client privilege, James Pendleton has since given full responses to the requests during the course of his deposition on February 25 ..." Debtors' Response, March 6, 1991 at 2. While Mr. Pendleton testified in his deposition that he provided legal advice to Broyhill in connection with a reduction in work force, Mr. Pendleton refused to testify whether the ADEA was a subject of his consultations with Debtors. Therefore, the issue of whether the materials requested by Claimant are protected by the attorney-client privilege is not "moot," as argued by the Debtors.

It is a "long established rule that confidential communications between an attorney and his client are absolutely privileged from disclosure against the will of the client." *Diversified Indus., Inc. v. Meredith*, 572 F.2d 596, 601 (8th Cir.1977) (en banc). Legal advice given by the attorney "is clearly privileged to some degree." *Sedco Inter., S.A. v. Cory*, 683 F.2d 1201, 1205 (8th Cir.1982), *cert. denied*, 459 U.S. 1017, 103 S.Ct. 379, 74 L.Ed.2d 512 (1982).

Claimant asserts two reasons to support his argument that the requested admission does not fall within the attorney-client privilege: (1) Claimant contends that Debtors have waived any asserted privilege in the instant case; and (2) Even if Debtors have not waived the privilege, because there is not only an allegation of a willful violation of the ADEA but also testimonial and documentary evidence to support the allegation, any purported claim of privilege must give way. As set out below, this Court finds that both reasons asserted by Claimant are actually dependent upon a determination that the attorney-client privilege was waived.

### A. *Waiver of Attorney–Client Privilege*

 "In determining whether there has been an implied waiver [of the attorney-client privilege], two elements must be examined: (1) implied intention and (2) fairness and consistency." *Sedco*, 683 F.2d at 1206. A waiver " 'is to be predicated ... when the conduct ... places the claimant in such a position, with reference to the evidence, that it would be unfair and inconsistent to permit the retention of the privilege.' " *Id.* (quoting 8 J. Wigmore, Evidence § 2388, at 855 (McNaughton rev. 1961)). Other courts have found waiver by implication in the following situations: (1) "when a client testifies concerning portions of the attorney-client communication;" (2) "when a client places the attorney-client relationship directly at issue;" (3) "and when a client asserts reliance on an attorney's advice as an element of a claim or defense." *Id.* (citations omitted).

Mr. Priest asserts that Debtors have waived the attorney-client privilege because a Broyhill official, the client, testified in a deposition concerning a portion of the

---

1. James K. Pendleton is Associate General Counsel to Interco and, as such, considers his "duties and ... clients to be the entire Interco organization." Pendleton Deposition at 8.

attorney-client communication. Neither party submitted a copy of the deposition of the Broyhill official. The Pendleton deposition contains a colloquy concerning the Broyhill official's deposition. Mr. Pendleton was questioned about a certain "Exhibit 7" and the Broyhill official's testimony about that document. Claimant alleges "Exhibit 7" is a copy of handwritten notes taken by the Broyhill official during conversations with Mr. Pendleton. This document was apparently supplied to Claimant by an attorney in another action. Mr. Pendleton testified that he considered the communication privileged based on the Broyhill official's deposition.

This Court does not have the Broyhill official's deposition. The evidence presented here does not clearly show the client, the Broyhill official, testified "concerning portions of the attorney-client communication." *Id.* at 1206. Further, this Court notes it would be inconsistent with the principles of the waiver theory to find that Debtors waived their attorney-client privilege based on a document Claimant obtained from another source. Mr. Priest has not demonstrated "it would be unfair and inconsistent to permit the retention of the privilege." *Id.*

### B. *Willful Violation of ADEA as a Waiver of Privilege*

■ Claimant has also argued that Debtors' attorney-client privilege must give way because Claimant has asserted a willful violation of the ADEA, and testimonial and documentary evidence reflects that, contrary to the Debtors' assertions, Debtors considered or relied on legal advice concerning ADEA issues in making the "1987 sales force reduction."

Claimant relies on *Equal Employment Opportunity Commission v. Fox–Bayside School District*, 31 E.P.D. (CCH) page 33,-609, 1983 WL 503 (D.C.E.D.Wis.1983). This decision was entered in a pretrial proceeding before a United States Magistrate Judge.

In *Fox–Bayside*, the Court found that "[t]he individual board members deny that they knowingly violated the law and *state that in making their decision they considered the advice of their attorney."* *Id.* (emphasis added). The Court held that because "the record to date demonstrates that individual board members sought out, listen [sic] to and considered the advice of their attorneys before acting ... [t]he privilege must give way ..." The *Fox–Bayside* decision cites no law to support this conclusion. However, this Court concludes that the *Fox–Bayside* decision included a determination of implied waiver of the attorney-client privilege. As noted above, some Courts have found implied waiver of the attorney-client privilege when a client asserts reliance on an attorney's advice as an element of a claim or defense. *See Sedco*, 683 F.2d at 1206.

Here, Claimant has not presented any evidence, testimonial or otherwise, that shows that Debtors have stated that in making their decision they considered the advice of their attorney. To the contrary, Debtors argue that they have not raised the defense of advice of counsel. This Court must find that Debtors have not, at this time, asserted reliance on an attorney's advice as a defense and Debtors have not otherwise waived the attorney-client privilege accorded to them. Claimant's Motion to Compel Debtors to admit or deny Request for Admission # 45 must be denied.

■ As to Claimant's request for production of documents, Debtors were requested to produce "all documents showing the legal advice sought and the legal advice given as to debtors' potential liability under the ADEA relating to the said proposed and actual sales work force reductions." Debtors assert that "upon full review of their files, Debtors have discovered that there are no documents responsive to this request and have informed Claimant's counsel of that fact." Debtors' Response at 3. Claimant argues he has in his possession "Exhibit 7" which is the type of document sought in his request for production. As noted above, "Exhibit 7" was apparently supplied to Claimant by an attorney in another action. At the hearing, Debtors offered to supply Claimant with another copy of "Exhibit 7;" however, Debtors did

not relinquish any privilege they might have as to the contents of the document. In addition, Debtors restated their assertion they have no other responsive documents. Without reaching the issue of whether this type of document is admissible as evidence, this Court must conclude that Claimant's request for production of documents is moot, based on Debtors' contention that they have no responsive documents.

IT IS ORDERED that this matter is concluded; and that the Debtors' objection based on a claim of attorney-client privilege is SUSTAINED; and that the Claimant's motion to compel the Debtors to admit or deny Request for Admission # 45 is DENIED; and

That the Claimant's motion to compel production of documents with respect to legal advice given as to potential liability under ADEA is DENIED AS MOOT.